FILED

97 OCT 30 PM 3: 18

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

OCT 30 1997

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WANDA LYONS,            }
                        }
    Plaintiff,          }
                        }      CIVIL ACTION NO.
    vs.                 }
                        }      CV-96-AR-1658-S
FONTAINE FIFTH WHEEL COMPANY, }
                        }
    Defendant.          }

## MEMORANDUM OPINION

The court has before it the motion of defendant, Fontaine Fifth Wheel Company ("FFW"), for summary judgment in the above-styled cause. Plaintiff, Wanda Lyons ("Lyons"), a former FFW employee, alleges that FFW violated the Civil Rights Act of 1964, *as amended*, and the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), by demoting her on two occasions because of her gender, by failing to promote her on several occasions because of her gender, by paying her less than similarly situated males, and by demoting her in retaliation for her complaint of gender discrimination. White also alleges that FFW violated the Fair Labor Standards Act of 1938, *as amended*, 29 U.S.C. § 201, *et seq.* ("Equal Pay Act"), by paying her less than males who performed essentially the same work. For the following reasons, the court determines that no genuine issue of material fact

28

exists with respect to any of said claims and, therefore, that FFW is entitled to judgment as a matter of law.

### I. *Undisputed Material Facts*

Lyons, a female, began working at FFW's Pinson, Alabama, production plant as a utility operator on May 13, 1994. The position of utility operator is the company's entry level position, and employees in this position perform general, unskilled labor. When Lyons began working as a utility operator, she was primarily responsible for operating a belt grinder — a device used to grind parts.

On July 5, 1994, FFW temporarily assigned Lyons to work in the plant's Fabrication Shop. During this temporary assignment, Lyons was responsible for operating a device called a power bender. Although operating this device was her main responsibility, on occasion Lyons would set-up and operate other equipment used in the Fabrication Shop. Lyons remained on temporary assignment in the Fabrication Shop until she was promoted to the position of machine shop operator on August 8, 1994. Following this promotion, FFW assigned Lyons to work in the plant's Machine Shop.

FFW reorganized its compensation system for hourly employees

on May 22, 1995. As a part of this reorganization, several positions at the plant were reclassified to better reflect the degree of skill required of the position. For example, the machine shop operator position was divided into two, separate positions — machine shop operator and single drill press operator. Employees then were reassigned to the reclassified positions on the basis of their overall plant seniority. As a result of this reorganization, Lyons was reclassified as a single drill press operator. Following her reclassification, she received a 9.4% pay raise.

In June, 1995, FFW selected Lyons for training as a lead-person — the plant's entry-level management position. An employee serving as a lead-person has greater responsibility than other hourly employees. For example, a lead-person typically works a nine hour shift, and he or she is charged with making sure that his or her department is keeping pace with production requirements. In exchange for these additional duties, a lead-person receives 50¢ per hour more than the highest rate of pay for his or her respective department. When a lead-person is absent, the department supervisor has the discretion to assign another employee to that role. When an employee is asked to fill in as a lead-person, he or she receives the increased rate of pay

3

described above.

Lyons's training as a lead-person consisted of on-the-job training with Machine Shop lead-person, Michael Cunningham ("Cunningham"). Along with the plant's supervisory personnel, she also attended management classes at Jefferson State Junior College in July, 1995. Lyons was the only nonsupervisory employee who attended these classes. Following her training, Lyons filled in for Cunningham as Machine Shop lead-person when he was absent on several occasions during the period July to October, 1995. Despite her training, Lyons never served as lead-person on anything other than a temporary basis, and FFW never officially promoted her to that position.

Beginning in October, 1995, FFW experienced a decrease in its overall production demand. Nevertheless, around this same time, production demand for the plant's Fabrication Shop increased. On October 7, 1995, FFW temporarily transferred Lyons to the Fabrication Shop in an effort to meet the heightened production requirements in that department.

In early November, 1995, while Lyons was still on temporary assignment to the Fabrication Shop, she noticed that Cunningham, the Machine Shop lead-person, was absent. According to Lyons, when she asked the plant superintendent, Tom O'Donnell

4

("O'Donnell"), if she would be filling in for Cunningham during his absence, and he told her "No." Lyons also claims that when posed the same question to the plant manager, Mel Barham ("Barham"), he told her that "she would no longer be used as a temporary leadperson because the men were complaining about working for a female and had threatened to file a lawsuit." Pl. Brf. at 4-5. Lyon did not fill in for Cunningham during his absence in early November, 1995.

The decrease in FFW's overall production demand continued into November, 1995. In response to this situation, the company implemented a plant-wide lay-off on November 19, 1995. As a part of the lay-off, FFW reduced the total number of single drill press operator positions. However, under the company's lay-off policy, an employee whose position was being eliminated could "bump" into another position that he or she had held previously provided that he or she had enough seniority to do so. Def. Exh. 3C. Because of her own relatively low seniority, Lyons was bumped from her position as a single drill press operator during the lay-off. Yet, rather than to lose her job entirely, Lyons used the seniority that she had to bump into her former position as a utility operator. Twenty other FFW employees also were bumped from higher positions into utility operator positions due

5

to the November, 1995, lay-off.

On November 29, 1995, Lyons filed a charge (the "1995 EEOC charge") with the Equal Employment Opportunity Commission ("EEOC"). In this charge, she alleged that her demotion to utility operator during the November, 1995, lay-off was the result of gender discrimination. The 1995 EEOC charge did not refer to FFW's decision not to use Lyons as temporary lead-person during Cunningham's absence earlier that month. Likewise, it did not mention the comments that O'Donnell and Barham allegedly made to her. FFW received a copy of this charge on January 16, 1996.

Between December 4, 1995, and January, 21, 1996, Lyons took workers' compensation leave to recover from a hernia operation. When she returned to work on January 22, 1996, FFW assigned her to light duty in the stockroom. Lyons remained on light duty until mid-February, 1996.

Following her light duty assignment, FWW reassigned Lyons to the Fabrication Shop as a utility operator. Between April 8-12, 1996, that department's lead-person, Matt Mitchell ("Mitchell"), went on vacation. Given that the Fabrication Shop workforce had been reduced in the November, 1995, lay-off, the department's supervisor, Robert Weidlich ("Weidlich"), elected to leave the lead-person slot unfilled while Mitchell was away.

6

On April 17, 1996, Weidlich injured his leg. The injury caused him to be away from his duties until May 20, 1996. During his absence, O'Donnell assigned Tom Harris ("Harris") to be acting supervisor in the Fabrication Shop. Harris had prior experience as the department's lead-person, and he had a thorough understanding of the set-up and operation of all the equipment used in the Fabrication Shop.

On April 4, 1996, the EEOC issued Lyons a right-to-sue letter in response to her 1995 EEOC charge. Lyons instituted this lawsuit on June 25, 1996. On July 24, 1996, Lyons filed a second charge with the EEOC. In that charge, Lyons alleged that FFW was guilty of gender-based wage discrimination, discrimination in promotions, and retaliation in violation of Title VII. She "piggy-backed" her retaliation claim onto this case by amending her complaint on July 26, 1996. The EEOC issued her a right-to-sue letter for her second charge on September 25, 1996.

## II. *Summary Judgment Standard*

Rule 56 states in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show

7

>      that there is no genuine issue as to any material fact and
>      that the moving party is entitled to a judgment as a matter
>      of law.

Fed.R.Civ.P. 56(c). The Eleventh Circuit also has observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). FFW has invoked Rule 56.

### III. *Discussion*

#### A. Lyons's Demotion Claims.

Lyons alleges that FFW twice demoted her because of her gender. The first demotion occurred when FFW demoted Lyons from machine shop operator to single drill press operator on May 22, 1995. The second demotion occurred when FFW demoted Lyons from single drill press operator to the entry-level utility operator position in its November, 1995, plant-wide lay-off. Both claims fail.

First, any claim regarding the May 22, 1995, demotion is not timely. "As a prerequisite to bringing suit under Title VII, a charge [of discrimination] must be filed with the EEOC within 180 days of the date of the act giving rise to the charge." Calloway v. Partners Nat'l Health Plans, 986 F.2d 446, 448 (11th Cir.

1993) (citing 42 U.S.C.A. § 2000e-5(e) (1992)). Given that Lyons filed her first EEOC charge on November 29, 1995, any allegedly discriminatory acts occurring before June 2, 1995, fall outside the 180-day window described above. Consequently, this court is without jurisdiction to hear Lyons's claim regarding the May 22, 1995, demotion. Therefore, FFW must receive summary judgment on said claim.

Second, Lyons has failed to show that the reason given for the demotion to utility operator is a pretext for gender discrimination. According to FFW, a gender-neutral criterion — overall plant seniority — determined whether an employee was "bumped" during the lay-off. FFW demoted Lyons to utility operator because it was the only position that she had enough seniority to retain under the company's lay-off policy. Thus, FFW has articulated a legitimate, nondiscriminatory reason for Lyons's second demotion.[1] Under the well recognized McDonnell Douglas-Burdine rubric, the burden shifted to Lyons to produce evidence from which a reasonable fact-finder could conclude that the reason given by FFW for the demotion is merely a pretext for

---

[1] Although Lyons does not articulate a *prima facie* case for the November, 1995, demotion, FFW does not challenge her ability to do so. For purposes of this opinion, the court will assume that FFW's failure to make such a challenge amounts to an implicit concession that Lyons can make out a *prima facie* case for this claim.

9

gender discrimination. However, Lyons fails to offer any evidence of pretext with respect to her demotion to utility operator. Merely describing a reason as false does not meet the burden of refutation. As a result, FFW is entitled to judgment as a matter of law on the second demotion claim.

### B. Lyons's Wage Discrimination Claims.

Lyons alleges that she twice experienced gender-based wage discrimination. First, she claims that, on those occasions when she served as a temporary lead-person, she was paid less than males who also served in that capacity. Second, she claims that when she received management training in July, 1995, she was paid less than males who also participated in the training. FFW contests these allegations by arguing that any claim of gender-based employment discrimination is beyond the scope of Lyons's 1995 EEOC charge. FFW's argument is well taken.

"The scope of a judicial complaint under Title VII is limited to the acts of discrimination contained in the EEOC charge or claims '"like or related"' to the claims raised in the charge." Oliver v Russell Corp., 874 F. Supp. 367, 371 (M.D. Ala. 1994) (citing Coon v. Georgia Pacific Corp., 829 F.2d 1563, 1569 (11th Cir. 1987)). Lyons's 1995 EEOC charge alleges only a discriminatory demotion. Pl. Exh. 10. It makes no mention of

gender-based wage discrimination. In the court's view, a claim of gender-based wage discrimination is not "like or related" to a claim of discriminatory demotion. Consequently, Lyons's claims for wage discrimination are beyond the scope of her 1995 EEOC charge, and this court is without jurisdiction to hear such claims. Cf. Lester v. Twitchell, 894 F. Supp. 1511, 1516 n.9 (M.D.Ala. 1995) (finding allegation of wage discrimination to be beyond scope of EEOC charge alleging only wrongful termination). As a result, FFW is entitled to receive summary judgment on Lyons's wage discrimination claims. Cf. Oliver, 874 F. Supp. 367, 371 (M.D.Ala. 1994) (dismissing all Title VII claims not related to allegation of discriminatory transfer contained in EEOC charge).

### C. Lyons's Promotion Claims.

Lyons claims that she experienced gender discrimination in promotions on four separate occasions. First, she alleges that "[i]n late 1995, [she] was told by her supervisor that, although she was qualified to perform the Lead Person position, she would not be promoted to Lead Person because male employees had complained about [her] possibly supervising them. . . ." Amd. Cmplt. at ¶ 15 (emphasis supplied). More specifically, Lyons claims that FFW's decision not to use her as the Machine Shop

lead-person during November, 1995, amounted to gender discrimination. FFW argues that this claim fails because it falls outside the scope of Lyons's 1995 EEOC charge. Again, the company's argument is well taken.

As noted above, "[i]t has long been established in this circuit that the scope of a judicial complaint is defined by the scope of the EEOC investigation that 'can reasonably be expected to grow out of the charge of discrimination.'" Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 169 (11th Cir. 1988) (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970)). Lyons's 1995 EEOC charge refers only to alleged gender discrimination regarding a demotion that she received in November, 1995. It does not refer to promotions, and it does not mention alleged exchanges with O'Donnell and Barham. Considering these omissions, it is unreasonable to expect that an EEOC investigation of this demotion should grow to include an investigation of a separate promotion that Lyons allegedly failed to receive because of her sex. Therefore, the court concludes that Lyon's claim for failure to promote her to a lead-person position in November, 1995, is beyond the scope of her 1995 EEOC

12

charge.[2]  As a result, this court is without jurisdiction to hear this first promotion claim, thereby making summary judgment in favor of FFW on it appropriate.[3]  *Cf.* Oliver v. Russell Corp., 874 F. Supp. 367, 371 (M.D.Ala. 1994) (dismissing Title VII claims alleging, *inter alia*, discrimination in promotions where plaintiff limited his EEOC charge to allegation that employer transferred him to lower paying position due to racially differential treatment in discipline).

Second, Lyons alleges that FFW discriminated against her when it failed to use her as a temporary replacement while Mitchell, the regular Fabrication Shop lead-person, was away on vacation during April 8-12, 1996.  FFW argues this claim should fail because Lyons cannot make out the necessary *prima facie*

---

[2]  Lyons tries to salvage her first promotion claim by recharacterizing FFW's decision not to use her to fill the November, 1995, Machine Shop vacancy as a demotion.  Pl. Brf. at 8.  In support of this recharacterization, Lyons asserts that she held the position of "Temporary Lead Person" and that the decision not to use her in the vacancy amounted to a demotion from this position.  This assertion is groundless.  Nothing in the record indicates that a position called "Temporary Lead Person" even exists at FFW.  Obviously, it is impossible for Lyons to have been demoted from a position that she never held officially.  Therefore, the court will regard her first promotion claim in the same way that Lyons does in her amended complaint — as a promotion claim.

[3]  Lyons's first promotion claim also is untimely under her second EEOC charge filed on July 24, 1996.  Under the time limits imposed by Title VII, this second charge can only cover incidents of discrimination dating from January 26, 1996.  Therefore, Lyons cannot use her second EEOC charge to encompass discrimination alleged to have occurred in October and November, 1995.

case.  FFW, again, makes a convincing argument.

To establish her *prima facie* case for discrimination in promotions, Lyons must demonstrate: (1) that she is a member of a protected class; (2) that she was qualified for the promotion(s); (3) that she was denied the promotion(s); and (4) that other equally or less qualified employees from outside the protected class received the promotion(s).  <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997).  The record reveals that FFW assigned no one to fill the lead-person position during Mitchell's absence in April, 1996.  Def. Exh. at ¶ 50.  Lyons offers nothing to refute this fact.  Consequently, she has failed to satisfy the fourth element of the *prima facie* case.  Therefore, FFW is entitled to judgment as a matter of law on Lyons's second demotion claim.

Third, Lyons asserts that FFW discriminated against her by not promoting her to fill the vacancy created when Weidlich, the Fabrication Shop supervisor, was out from April 17, 1996, to May 20, 1996, tending to his injured leg.  As noted above, the company chose Harris to fill the vacancy instead.  FFW argues that Lyons cannot make out her *prima facie* case because she cannot demonstrate that she was equally or more qualified than Harris.  The record provides ample support for FFW's argument.

14

Harris had eight months of prior experience as the Fabrication Shop lead-person, and he had a complete knowledge of the set-up and operation of all the equipment in that department. In contrast, Lyons had only four months of intermittent experience in the Fabrication Department, and she had never served as lead-person for that department. Moreover, she admitted in her deposition that she does not have experience setting up several of the machines used in the Fabrication Shop.[4] Lyons Depo. II at 53-59. Given these facts and her admission, it is impossible for the court to conclude that Lyons was equally or more qualified than Harris. Consequently, she has failed to satisfy the fourth element of the *prima facie* case, and the court concludes that FFW

---

[4] Lyons submitted an affidavit in opposition to FFW's motion for summary judgment which states "I was qualified to serve as a temporary lead person in the Fabrication Shop because I had extensive experience with nearly every machine in the department, and had management training that Tom Harris did not have." Pl. Exh. 24 at ¶ 5. This affidavit contradicts her deposition testimony, cited above, in which she admits that she did not have experience setting up several of the Fabrication Shop machines. In Junkins & Assocs., Inc. v. U.S. Industries, Inc., 736 F.2d 656, 656 (11th Cir. 1984), the Eleventh Circuit held that "a district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation." In the instant case, Lyons offers no explanation for the contradiction between her deposition testimony and affidavit. Using the prerogative granted by the Eleventh Circuit, this court finds that Lyons's affidavit is a sham, and it will not consider the affidavit as evidence in this case. Even if the court were to accept the affidavit, doing so would not alter the court's view of Lyons's qualifications. Lyons admits in the affidavit that she had no experience with either "the saw and the burn table." Pl. Exh. 24 at ¶ 4. This admission essentially concedes that Harris — a person with experience on all the machines in the department — was more qualified than she.

should receive summary judgment with respect to her third promotion claim.

Fourth, Lyons alleges that "[i]n June of 1996, a lead person position became available for which [she was] qualified, but [FFW] refuse[d] to place her in that position." Amd. Cmplt. at ¶ 17. Once again, FFW convincingly argues that this claim fails because Lyons cannot make out a *prima facie* case for discrimination in promotions. The record reveals that no lead-person position became available in June, 1996. Def. Exh. 3 at ¶ 52. Lyons offers nothing that contradicts this evidence. As a result, Lyons has failed to satisfy the third element of the *prima facie* case. Therefore, FFW must receive summary judgment on her final promotion claim.

### D. Lyons's Retaliation Claim.

Lyons alleges that FFW has retaliated against her for filing her 1995 EEOC charge. According to Lyons, after she filed the 1995 EEOC charge, FFW refused to use her as a temporary replacement when supervisory positions became vacant in Fabrication Shop in April, 1996. FFW refutes this allegation by arguing that Lyons cannot establish a *prima facie* case for retaliation. FFW is correct.

To establish a *prima facie* case for retaliation in violation

16

of Title VII, Lyons must show: (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) the existence of a casual link between the protected expression and the adverse action. <u>Raney v. Vinson Guard Service, Inc.</u>, 120 F.3d 1192, 1196 (11th Cir. 1997). In addition, the Eleventh Circuit recently explained what a plaintiff must show to make out the third element for *prima facie* retaliation by observing:

> In order to satisfy the "casual link" prong of a prima facie retaliation case, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action. (Citation omitted). Since corporate defendants act only through authorized agents, in a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression and acted within the scope of his or her agency when taking the action.

<u>Id</u>. at 1197 (citing <u>Goldsmith v. City of Atmore</u>, 996 F.2d 1155, 1163 (11th Cir. 1993)). Even when assuming that Lyons can satisfy the first and second elements of her *prima facie* case, it is clear that she has not satisfied the third element. The court finds nothing in the record to indicate that FFW's management — specifically, O'Donnell and Weidlich — was aware of Lyons's 1995 EEOC charge when decisions regarding the April, 1996, vacancies in the Fabrication Shop were made. Therefore, Lyons has failed

17

to prove an essential element to her *prima facie* case. FFW is due summary judgment on Lyons's retaliation claim.

### E. Lyons's Equal Pay Act Claim.

Lyons alleges that FFW discriminated against her with respect to wages in violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1). More specifically, she claims that FFW paid her an hourly rate that was less than that paid to male employees who performed essentially the same work. FFW challenges this claim by arguing that Lyons has not made out a *prima facie* case under the Equal Pay Act. Once again, FFW's argument is well taken.

"In order to make out a prima facie case under the Equal Pay Act, the plaintiff[] must show that [her] 'employer pays different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."'" Beavers v. American Cast Iron Pipe Co., 975 F.2d 792, 801 (11th Cir. 1992). Given that Lyons fails to put forward any evidence to support her Equal Pay Act claim, summary judgment in favor of FFW on her Equal Pay Act claim is appropriate.

18

## IV. *Conclusion*

This case is devoid of any direct evidence of the matters of which Lyons complains. Instead, it is based on a combination of (1) circumstances that do not provide sufficient support in logic and fairness to plaintiff's ultimate contentions, and (2) a heavy dose of wishful thinking and unjustified mental gymnastics by plaintiff herself.

The court will enter a separate and appropriate order reflecting the conclusions the court has set forth above.

DONE this 30th day of October, 1997.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE